CAFLISCH LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24643.   Promulgated October 10, 1930.

*Francis J. Batchelder*, *C. P. A.*, for the petitioner.
*John E. Marshall, Esq.*, and *C. A. Ray, Esq.*, for the respondent.

1224

## OPINION.

ARUNDELL: It has been stipulated that the following allowances should be made in redetermining the deficiency:

| | |
|---|---:|
| Depletion on timber | $18,612.28 |
| Repairs to engine (item capitalized by respondent as cost of a pair of scales) | 386.50 |
| Depreciation on steam shovel | 323.06 |
| Depletion on coal in lieu of amount allowed by respondent | 508.38 |

In his computation of the deficiency in dispute the respondent capitalized the sum of $284.98 expended for freight on an engine and the cost of constructing the extension to its railroad. It is con-

tended by petitioner that the sums were properly charged to "railroad maintenance" and should be allowed as expense deductions.

No evidence was offered to show the circumstances under which the freight charges were incurred or paid. Accordingly, we must sustain the respondent's action in treating the charges as a capital item.

Among the authorities cited by the petitioner in support of its contention that the cost of the railroad extensions should be allowed as an expense item, and not capitalized, as was done by the respondent, is the district court's decision in *United States* v. *Roden Coal Co.*, 39 Fed. (2d) 425, which was cited with approval in *Marsh Fork Coal Co.* v. *Lucas*, 42 Fed. (2d) 83, reversing on the issue before it, *Marsh Fork Coal Co.*, 11 B. T. A. 685.

The decisions cited above rested, in part, upon a showing that the mining equipment, the cost of which was sought to be deducted as an expense, did not add anything to the value of the mines, increase their output, or decrease production costs, but merely enabled the taxpayer corporations to maintain the output of fully developed properties. In the *Marsh Fork* case considerable weight was given to authorities on accounting as applied to mining operations in view of the requirements of the taxing statute that net income shall be computed pursuant to the accounting methods of the taxpayer except where the method employed does not clearly reflect income. Evidence of this character is lacking here. The court also pointed out that at best there is a degree of uncertainty in mining operations, as one does not know definitely what is under the ground, and was careful to point out that ordinarily the cost of assets, such as machinery, having a useful life greater than one year should be capitalized. While petitioner's witness made the broad statement that the extension was built to maintain output and not increase it, it must be obvious that until the necessary spurs and extensions are made to reach the timber, the cutting of which is a part of the planned operations, it may not be said that the tract has been fully developed. It is also important to remember that this extension was made at the time to meet the objection of the Kendall Lumber Co., which refused to consider the taking over of operations until this facility was provided.

The trackage had a useful life considerably in excess of one year, for all of it except the 1,000 feet abandoned by the Kendall Lumber Co. has been used continuously since 1924. The respondent committed no error in capitalizing the cost of the extension.

In the brief filed on petitioner's behalf it is contended that the cost of the 1,000 feet of trackage never used should not be capitalized, but allowed as a deductible " expense or loss " on the theory that the property was abandoned in 1920. There is considerable doubt as to

whether the petition raises such an issue. The petition merely alleges as error the respondent's treatment of the cost of the railroad extension as a capital expenditure instead of an expense for railroad maintenance. If it could be said that the question is properly before us, the petitioner would not be entitled to recover. The failure of the petitioner to use the track after it was laid did not have the effect of converting the cost thereof from a capital to an expense item, and if a loss occurred it was sustained after 1920. It must also be borne in mind that the extension was built with a view to its use by the Kendall Lumber Co. and it was not until 1924 that that company determined that the 1,000 feet would be of no use to it.

The evidence fully supports the claim of petitioner that its assets grouped as railroad equipment, rights of way, mill and shop and houses and store, will not have a useful life beyond 1930, when it will complete its timbering operations on the tract. These assets, together with the railroad extensions built in 1920, should be exhausted on the basis of such a useful period. Depreciation on the assets classified as horses and camp supplies should be increased from 15 to 20 per cent per annum upon the showing that they did not have a useful life in excess of five years. The respondent's action in exhausting the automobile at the rate of 20 per cent per annum will not be disturbed in the absence of any evidence on the correctness of the allowance.

Under the remaining issue it is claimed that petitioner's invested capital for 1920 should be adjusted because of an excessive allowance made for depletion for 1917. All of the facts alleged in the petition on the issue were denied by the respondent in his answer except his determination of invested capital of $242,230.43, and no testimony was produced at the hearing to show how the amount was reached. The petitioner has failed to furnish proof of error and the respondent's determination of invested capital will not be disturbed. *Duquesne Steel Foundry Co.*, 15 B. T. A. 467.

*Decision will be entered under Rule 50.*